UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-246-GWU

ALMA LEONA CHEEK,                                                          PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

09-246  Alma Leona Cheek

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-246 Alma Leona Cheek

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Alma Leona Cheek, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a major depressive disorder, marijuana abuse, borderline intellectual functioning, illiteracy, osteoporosis with no fractures, blindness in the right eye, and degenerative joint disease of the right ankle. (Tr. 11-12). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Cheek retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 14-21). The Appeals Council declined to review (Tr. 3-5), and this action followed.

At the first of three administrative hearings, the ALJ asked the VE whether a person of the plaintiff's age (46 at the time of her application, 47 at the time the hypothetical question was presented), history of schooling to the eighth grade in Special Education, and work experience as a housekeeper and sewing machine operator, could perform any jobs if she were capable of "medium" level exertion, and also had the following non-exertional restrictions. She: (1) could not kneel, crawl, operate foot pedal controls, or climb ladders, ropes, or scaffolds; (2) could do

7

no work requiring binocular vision; and (3) was restricted to simple, entry level work with one- to two-step procedures, no requirement for detailed or complex problem solving, independent planning, the setting of goals, or for literacy, no frequent changes in work routines, and only occasional interaction with the general public. (Tr. 167). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 168).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the plaintiff's Date Last Insured (DLI) for the purposes of her DIB claim was December 31, 2002 (Tr. 240), meaning that she would have to establish disability before that date in order to be entitled to benefits. The plaintiff did not present any evidence of medical treatment prior to the DLI, and none of the proffered evidence from after that date specifically "relates back" to the relevant period. Accordingly, the portion of the decision finding the plaintiff ineligible for DLI is supported by substantial evidence. The SSI claim is not affected.

The plaintiff alleged disability due to osteoporosis and illiteracy. (Tr. 288). She testified that she had been unable to finish the eighth grade and had been in Special Education classes. (Tr. 36, 95). She had never been able to read. (Tr. 96). She testified to a long history of anxiety and depression, partly related to a number

09-246 Alma Leona Cheek

of deaths in her family. (Tr. 42, 48, 99, 102). She had received some treatment for depression while she was employed at a Veterans Administration facility (Tr. 163), and was more recently attending one of two Comprehensive Care Centers (Tr. 31, 90, 153). She found the treatment and medication somewhat helpful, although she still had crying spells. (Tr. 103, 153). She had stopped working at her job as a housekeeper because of physical pain, which she attributed to osteoporosis. (Tr. 32-3, 39, 110). She was unable to afford medical treatment for her physical problems. (Tr. 107-8).

The plaintiff makes several arguments on appeal. First, she suggests that it was error for the ALJ not to recognize that the plaintiff was within approximately two months of her 50th birthday at the time the most recent administrative decision was issued on March 27, 2009, citing the provisions in 20 C.F.R. §§ 404.1563(b) and 416.963(b), which provide that the Commissioner "will not apply the age categories mechanically" and that if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [a claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Whatever else made be said about this argument in light of

09-246 Alma Leona Cheek

a recent Sixth Circuit case,[1] the Commissioner correctly notes that the plaintiff's assertion that she would be found disabled at age 50 under Rule 202.09 of the Medical-Vocational Guidelines is irrelevant, since 202.09 applies to individuals who are limited to "light" level exertion. The plaintiff was found capable of medium exertion, meaning that the proper rule, even at age 50, would be 203.19, which directs a conclusion of "not disabled."[2] Therefore, this argument is without merit.

The remainder of the plaintiff's arguments concern mental and intellectual limitations.

First, the plaintiff notes that Psychologist Gary C. Stewart conducted testing in December, 2005, and obtained a valid verbal IQ score of 66, a performance IQ of 65, and a full scale IQ of 63. (Tr. 341-2). The plaintiff maintains that Dr. Stewart's testing, combined with school records indicating that the plaintiff was in Special Education for at least three years and apparently retained in both the first and the eighth grades, establishes that she meets the requirements of the Commissioner's Listing of Impairment (LOI) 12.05C.

---

[1] As the plaintiff concedes, the Sixth Circuit has declined to hold that the defendant must address mechanical application of the Medical-Vocational Guidelines in every borderline age situation. Bowie v. Commissioner of Social Security, 539 F.3d 395, 397 (6th Cir. 2008).

[2] The plaintiff does not challenge the exertional level found by the ALJ.

09-246  Alma Leona Cheek

LOI 12.05C, captioned "Mental Retardation," provides that an individual is automatically considered disabled if he or she can demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009).  The Listing is met, however, only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph to the listing.  Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2002).  The introductory paragraph defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

Although Dr. Stewart indicated that the IQ scores were valid, and Mrs. Cheek's intellectual functioning was "in the mentally retarded range based on test scores, . . . her functional ability is considered to be in the borderline range." (Tr. 343).  His formal diagnosis was of a dysthymic disorder and borderline intellectual functioning.  (Tr. 342).  He also indicated that there was "no indication of cognitive impairment that would limit vocational training and rehabilitation, but training would be limited due to her relatively low IQ."  (Tr. 343).

In a similar factual situation, the Sixth Circuit has ruled that an ALJ need not find a claimant disabled solely on the basis of the numerical result of an IQ test,

09-246  Alma Leona Cheek

where the psychologist administering the test indicated that the plaintiff's functional ability was "very likely" in the borderline range.  <u>Carrington v. Social Security Administration</u>, 205 F.3d 1339, 1999 WL 1206887 (6th Cir. 1999) (unpublished).

In addition to Dr. Stewart's statement that the plaintiff was functioning in the borderline range,  non-examining state agency psychologists Ilze Sillers and Jan Jacobson concluded that his report supported a finding of borderline intellectual functioning (Tr. 361, 399), and treating sources at the Jessamine Counseling Center, including the plaintiff's psychiatrist, Dr. David Shraberg, did not diagnose mental retardation (e.g., Tr. 433, 448).  As the Sixth Circuit has noted, the Commissioner's regulations "do not limit the question of validity to test results alone in isolation from other factors." <u>Brown v. Secretary of Health and Human Services</u>, 948 F.2d 268, 269 (6th Cir. 1991) (citation omitted).  The ALJ's conclusion that LOI 12.05C was not met is supported by substantial evidence.

The plaintiff argues that it was error for the ALJ to reject restrictions imposed by Dr. Stewart and by Sue Reed, a licensed psychological associate at the Jessamine Counseling Center, who treated the plaintiff in conjunction with Dr. Shraberg.  Dr. Stewart had concluded, after examining the plaintiff on one occasion, that she would have a "poor" ability in the areas of performing complex functions, persistence and pace, dealing with stress and change, and reliability.  (Tr. 344). Reed wrote that she did not believe the plaintiff was "employable due to attention

09-246 Alma Leona Cheek

and concentration problems caused by chronic anxiety and frequent recurring depressive episodes." (Tr. 432).

Regarding Dr. Stewart, the plaintiff contends that the non-examining sources, Drs. Sillers and Jacobson, did not provide good reasons to reject his opinion. Dr. Sillers had commented that Dr. Stewart's opinions regarding restrictions were not fully supported by the plaintiff's history, the medical evidence of record, the plaintiff's activities of daily living, and by the mental status findings. (Tr. 361). Dr. Jacobson, while assessing more restrictions than Dr. Sillers, considered that the activities of daily living and mental status examination did not indicate "marked mental limitations." (Tr. 399). While more specificity might have been desirable, the opinion of a one-time examiner such as Dr. Stewart is not entitled to as much weight as a treating source. 20 C.F.R. § 416.927(d)(1)-(2) (2009). The ALJ provided detailed reasons in his decision for finding that the plaintiff had only a mild restriction in her activities of daily living and moderate difficulties in social functioning and concentration, persistence, and pace. (Tr. 12-13).[3] Under the facts of this case, the decision not to accept Dr. Stewart's restrictions is supported by substantial evidence.

---

[3]Moreover, Dr. Stewart assigned a Global Assessment of Functioning (GAF) score of 41 to 50. (Tr. 343). A GAF score in this range reflects serious impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. More recently, the treating sources at the Jessamine Counseling Center assigned a GAF of 62. (Tr. 448). A GAF score in this range reflects only mild impairment.

09-246  Alma Leona Cheek

Regarding Sue Reed, the counselor, the plaintiff concedes that a licensed psychological associate is not an "acceptable medical source" under the Commissioner's regulations.  20 C.F.R. §§ 404.1513, 416.913 (2009).  She contends that Social Security Ruling (SSR) 06-03p establishes "a policy of reliance on sources such as chiropractors, therapists, and nurse practitioners for determining the extent of a restriction imposed once the underlying impairment has been established." Memorandum in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 6, p. 18.  SSR 06-03p, however, states that the weight given to the non-medical sources "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . ."  The ruling goes on to state that

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these other sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case*.

(Emphasis added.)  In the present factual situation, Reed's opinion that she did not consider the plaintiff to be "employable" was a vocational conclusion outside her area of expertise.  Therefore, even assuming that the ALJ's rationale for rejecting it is not in conformance with SSR 06-03p, the opinion would have been entitled to little or no weight and would not have had an effect on the outcome of the case.

14

09-246  Alma Leona Cheek

The plaintiff's final argument, however, does have merit.  She asserts that, while purporting to rely on Dr. Jacobson's opinion, the ALJ did not include all the restrictions found by this source in the hypothetical question.  (Tr. 19).  In Dr. Jacobson's Mental Residual Functional Capacity Assessment, she had checked boxes in the Section I "Summary Conclusions" portion indicating that the plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 397-8).  The Commissioner argues that the ALJ should not have been required to include restrictions in this section, but only those factors listed in Section III of the report, captioned "Functional Capacity Assessment."  In a recent decision, the Sixth Circuit specifically declined to resolve this issue, but concluded that because the hypothetical factors in Section III were not entirely reflected in the hypothetical question, a vocational expert's testimony was not supported by substantial evidence.  Ealy v. Commissioner of Social Security, 594 F.3d 504, 515-17 (6th Cir. 2010).  The factual situation in this case almost exactly mirrors Ealy.  In the Section III portion of the report, Dr. Jacobson stated that the plaintiff was able to understand and remember simple instructions, sustain attention for simple tasks for extended periods of two-hour segments in an eight-hour day, tolerate coworkers and supervisors in a non-public setting, and adapt to changes

09-246  Alma Leona Cheek

as needed in work settings that were not highly pressured. (Tr. 399). The hypothetical question did not specify any restrictions on limitations of concentration, persistence, and pace to two-hour periods, or provide for a working environment that was not highly pressured. (Tr. 167). Therefore, in accordance with the holding in <u>Ealy</u>, further vocational testimony will be required.[4]

The decision will be remanded for further consideration.

This the 18th day of March, 2010.

K



Signed By:
<u>G. Wix Unthank</u>
United States Senior Judge

---

[4] This is not to suggest that the plaintiff should be prevented from submitting new or updated evidence.